UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GEORGETTE G.
O/B/O C.D.B.,

                Plaintiff,

v.                                              CASE # 21-cv-00331

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Law Offices of Kenneth Hiller, PPLC<br>  Counsel for Plaintiff<br>6000 North Bailey Avenue<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | CHRSITOPHER N. HURD, ESQ.<br>MEGAN J. McEVOY, ESQ.<br>MICHAEL P. CORONA, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.      **RELEVANT BACKGROUND**

    A.      **Factual Background**

C.D.B. was born on July 30, 2006 and was 12-years old at the time of his hearing. (Tr. 238). Generally, plaintiff alleges C.D.B.'s disability consists of posttraumatic stress disorder, (PTSD) and a learning disability. (Tr. 251).

    B.      **Procedural History**

On November 5, 2018, plaintiff protectively filed an application for Supplemental Security Income ("SSI") on behalf of her minor son, C.D.B., under Title XVI of the Social Security Act (Tr. 218). Plaintiff's application was initially denied, after which a timely request was made for a hearing before an Administrative Law Judge (ALJ). On March 9, 2020, plaintiff and C.D.B. appeared before ALJ Stephan Cordovani. (Tr. 63-102). On March 24, 2020, ALJ Cordovani issued a written decision finding C.D.B. not disabled under the Social Security Act. (Tr. 12-27). On November 5, 2020, the Appeals Council (AC) denied plaintiff's request for review. (Tr. 4-6). The ALJ's decision became the final decision of the Commissioner subject to judicial review under 42 U.S.C. § 405(g), incorporated for SSI by 42 U.S.C. § 1383(c)(3) and this action followed.

    C.      **The ALJ's Decision**

Generally, ALJ Cordovani made the following findings of fact and conclusions of law:

> 1. The claimant was born on July 30, 2006. Therefore, he was a school-age child on November 5, 2018, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since November 5, 2018, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: post traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD") and learning disability. (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
(a) The claimant has less than a marked limitation in acquiring and using information.
(b) The claimant has less than a marked limitation in attending and completing tasks.
(c) The claimant has less than a marked limitation in interacting and relating with others.
(d) The claimant has no limitation in moving about and manipulating objects.
(e) The claimant has less than a marked limitation in the ability to care for himself/herself.
(f) The claimant has less than a marked limitation in health and physical well-being.

6. The claimant has not been disabled, as defined in the Social Security Act, since November 5, 2018, the date the application was filed (20 CFR 416.924(a)).

(Tr. 12-27).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff argues the ALJ's findings that C.D.B. had a less than marked limitation in the domains of attending and completing tasks, acquiring and using information, and caring for oneself are not supported by substantial evidence. (Dkt. No. 5 at 1 [Pl.'s Mem. of Law]). Plaintiff specifically argues the ALJ did not properly consider the opinion evidence from C.D.B.'s teacher, ignored IQ scores, and improperly dismissing the opinion of the state agency consultant.

### B. Defendant's Arguments

In response, defendant argues the ALJ properly found C.D.B. had a less than marked limitation in the domains of attending and completing tasks, acquiring and using information, and caring for oneself. (Dkt. No. 7 [Def.'s Mem. of Law]). Defendant asserts the ALJ properly considered all evidence.

### III.   RELEVANT LEGAL STANDARD

#### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or combination of impairments – i.e., a slight abnormality or combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not

disabled. 20 C.F.R. § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. 20 C.F.R. § 416.926a(e).[1]

### IV.    ANALYSIS

#### A. Attending and Completing Tasks/Acquiring and Using Information

Plaintiff argues the ALJ did not properly assess the limitations in the domains of attending and completing tasks and acquiring and using information because there is a teacher questionnaire which she believes supports greater limitations. (Dkt. No. 6 at 8-11). In evaluating whether a child is disabled under the Act, the ALJ must consider all evidence in the case record, including information from nonmedical sources, such as teachers. *See* 20 C.F.R. § 416.924a(a). Although the ALJ explained the manner in which he interpreted Mr. Robins' questionnaire, he was not

---

[1] "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id*.

required to articulate under 20 C.F.R. § 416.920c(a)-(c) how he considered Mr. Robins' statement. *See* 20 C.F.R. § 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources . . . ."). Furthermore, the ALJ was not required to rely solely on the observations of the teacher but appropriately considered the entire record. *Cf. Christina B. v. Comm'r of Soc. Sec.*, 19-CV-1192, 2020 WL 5848732, at *7-8 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.) (finding that a teacher opinion indicating an obvious problem in the majority of the areas in a domain was not necessarily contradictory to the ALJ's finding that the claimant has a less-than-marked limitation in that domain, particularly when considering it in conjunction with all of the evidence in the record).

**Attending and Completing Tasks**

Plaintiff argues the teacher questionnaire completed by Mr. Robbins supports greater limitations in the domain of attending and completing tasks. (Dkt. No. 6 at 9). Indeed, the ALJ recognized that Mr. Robins found C.D.B. had serious problems carrying out multi-step instructions and organizing his materials. (Tr. 23, 293). However, as the ALJ explained, Mr. Robins assessed only one obvious problem (refocusing to task when necessary), and only slight or no problems in other areas of the domain, including determining that C.D.B. had no problems working without distracting himself or others, working at a reasonable pace, and finishing on time. (Tr. 23, 293). *Golibersuch o/b/o N.R.G. v. Comm'r of Soc. Sec.*, 18-CV-0976, 2020 WL 409991, at *5 (W.D.N.Y. Jan. 24, 2020) (noting that "obvious" problems in a domain do not necessarily equate to a marked limitation in that domain and finding that it was reasonable for the ALJ to interpret teacher statements opining "obvious" problems in some areas as being consistent with a less than marked level of limitation).

In addition to the questionnaire by Mr. Robins, the ALJ accordingly considered the other evidence of record, particularly plaintiff's testimony that C.D.B. required help remaining on task and evidence that C.D.B. had ADHD treated with medication. (Tr. 23, 81-82, 87, 547). However, C.D.B. conceded that he had better focus with medication while plaintiff testified that C.D.B. was calmer and more focused with medication and completed his assignments more efficiently and on time. (Tr. 20, 69, 71-73, 101, 245). The ALJ also referenced Dr. Farmer's observation of only mildly impaired attention and concentration. (Tr. 23). Lastly, the ALJ considered that Drs. Meyers and Souter assessed less than marked limitations in this domain. (Tr. 23, 111-12, 128).

Additional evidence supported the ALJ's finding of less than marked limitations in attending and concentrating. After a classroom observation, Ms. Fisher observed that C.D.B. demonstrated adequate motivation and attention throughout multiple tests and determined that, overall, C.D.B. demonstrated an understanding of class rules and expectations, an ability to complete independent work, and follow along with a whole-group discussion. (Tr. 498-99). Similarly, Dr. Liu noted that C.D.B. exhibited normal behavior and attention span for his age. (Tr. 552). Moreover, C.D.B. was observed as being alert and oriented during mental status examinations, and he attended to conversations and answered questions appropriately. (Tr. 411, 416, 487, 512, 605). Plaintiff has only argued the teacher questionnaire supported greater limitations in this domain, but the ALJ appropriately considered all the evidence of record in making his determination.

**Acquiring and Using Information**

Although Mr. Robins found obvious problems in 6 of 10 areas in this domain, he assessed no or only slight problems in the remaining areas. (Tr. 22-23, 292). As the ALJ explained, Mr. Robins assessed no serious or very serious problems in this functional domain (Tr. 22-23, 292).

As in the domain of attending and completing tasks, while the ALJ addressed Mr. Robbins questionnaire, he also considered other evidence of record that did not support marked limitations. For instance, the ALJ relied on Dr. Farmer's opinion that C.D.B. had only mild limitations attending to, following, and understanding age-appropriate directions, learning in accordance with cognitive functioning, and asking questions and requesting assistance. The ALJ also appropriately relied on the conclusions of Drs. Meyer and Souter, who found that C.D.B. had less than marked limitations in this domain. (Tr. 25-26, 111, 127-28).

Plaintiff also asserts the ALJ ignored educational records, including IQ scores, when considering the domain of acquiring and using information. (Dkt. No. 6 at 9-11). The ALJ expressly acknowledged and discussed all the evidence from the school, including IQ scores and special education records. (Tr. 21-22). The ALJ considered C.D.B.'s school records showing that, although he had some low or failing scores, he also had passing grades in several subjects. (Tr. 21-22, 75, 321, 335-36). In addition, the ALJ properly considered that C.D.B. demonstrated significant growth in reading, as testing showed that he improved from a score of 195 (beginning of 3rd grade level) in 2018 to a score of 213 (middle of 6th grade level) in 2019. (Tr. 22, 267, 324, 595). The ALJ also pointed to Dr. Farmer's observations that, although C.D.B. had average to borderline cognitive functioning, he exhibited coherent and goal-directed thought process and intact memory (including recalling three of three objects immediately and after a delay and recalling seven digits forward and four digits backward). (Tr. 22, 546-47). Similarly, just weeks before C.D.B.'s alleged onset date, he was observed as having intact memory with the ability to count and perform simple calculations and serial sevens. (Tr. 411). Plaintiff also testified that medication improved C.D.B.'s comprehension. (Tr. 79).

Overall, the ALJ reasonably concluded that the record as a whole, although showing some academic struggles, established improved symptoms and performance with medication and educational assistance. (Tr. 16-27). Substantial evidence supports the ALJ's conclusion that C.D.B. had less than marked limitations in this domain. (Tr. 21-23).

### B. Caring for Oneself

Next plaintiff argues the ALJ failed to support the finding of less than marked limitation in the domain of caring for oneself. (Dkt. No. 5 at 11). Plaintiff asserts the opinion of state agency medical consultant Dr. Meyer of a marked limitation was ignored by the ALJ and improperly dismissed. (*Id*). Indeed, after reviewing the evidence of record, on January 22, 2019, Dr. Meyer assessed plaintiff with a marked limitation in the ability to care for himself noting a recent hospitalization for suicidal ideations with a plan, history of sexual abuse, nightmares, prescriptions for Risperidone and Zoloft and limitations in ability to interact with and relate to others. (Tr. 112). Contrary to plaintiff's argument, the ALJ expressly stated the assessment of marked limitations in C.D.B.'s ability to care for himself was less persuasive as Dr. Meyer made the findings just three months after the child's October 2018 hospitalization. (Tr. 25, 112-13, 415).

The ALJ permissibly looked at the record as a whole at the time of the hearing and assessed the limitations. Although plaintiff argues the ALJ dismissed evidence pertaining to the hospitalization, the ALJ explicitly cited and discussed C.D.B.'s October 2018 hospitalization after he expressed suicidal thoughts and reporting prior suicidal ideation, history of sexual abuse and nightmares, depressed and anxious mood, and being bullied. (Tr. 24, 415-438, 440-460). The ALJ also properly considered that after C.D.B. was started on medications during his hospitalization, he said that the medication was working, and he felt "a lot better." (Tr. 24, 415). Additionally, during his hospitalization, C.D.B. reported that treatment and medication helped him to not feel as

angry and not want to hurt himself, and he endorsed less significant intrusive thoughts and resolved suicidal thoughts and auditory hallucinations. (Tr. 415-16, 452, 454, 456, 539, 544). Upon discharge, Dr. Dewey wrote that C.D.B. was not at imminent risk of seriously harming himself or others. (Tr. 417).

Furthermore, as discussed by the ALJ in support of the less than marked limitation, C.D.B.'s symptoms continued to show improvement with the introduction of medication and counseling after the October 2018 hospitalization. The ALJ pointed to C.D.B.'s November 2018 mental status examination showing that he was well-groomed, intelligent, and articulate with an excellent vocabulary, good eye contact, euthymic affect, good mood, spontaneous and goal-directed speech, intact thought process, and good insight and judgment. (Tr. 24, 510, 512). As the ALJ explained, during this examination, C.D.B. denied any thoughts of death or suicide, and his thought content reflected hope for the future. (Tr. 24, 510, 512). Likewise, in November 2018, C.D.B. reported that medication had been "very helpful" to "calm his mood and increase safety." (Tr. 523). Hospital notes indicated that C.D.B. "greatly benefited" from his hospitalization and introduction of medication management (Tr. 531). As the ALJ explained, plaintiff even reported that C.D.B. experienced improved ability to deal with frustration and remain calm and under control with medication. (Tr. 20, 69, 71-73, 85, 89-91).

The ALJ also recognized plaintiff's reports that C.D.B. needed reminders to complete chores and self-care, had difficulty obeying rules, had tantrums, did not travel independently, and required supervision to cook. (Tr. 24, 82-83, 85-87, 89-92, 244). However, the ALJ explained that C.D.B. reported that he took a bus to school, did chores, got ready for school on his own, brushed his teeth and took medication with reminders, and helped himself to simple foods (Tr. 24, 74 (testifying C.D.B. took the "yellow bus" to school without problems), 244, 412 (took public bus

to and from school), 96-99, 244, 260, 547). C.D.B. also reported that he liked to care for himself and be active. (Tr. 268, 596). Additionally, the ALJ properly relied on evidence showing that C.D.B. had no disciplinary problems at school and relatively few problems at home. (Tr. 21, 74, 89-91 (Plaintiff described C.D.B.'s "tantrums" as rolling his eyes and pouting, denied that C.D.B. had tantrums at school, and characterized C.D.B. as being "an angel" at school), 584). The ALJ also pointed to C.D.B.'s reports to Ms. Fisher that, with medication, he typically followed the rules in public, had no difficulty with bedtime routine, and had typical sleeping and eating habits for his age (Tr. 24, 498). Moreover, the ALJ considered that Mr. Robins found an obvious problem in only one single area of this domain, for handling frustration appropriately. (Tr. 24-25, 296). The ALJ properly considered that Mr. Robins found slight problems in only two areas and no problems in all seven remaining areas of this domain (Tr. 296). Notably, another state agency medical consultant, Dr. Stouter, reviewed the available evidence on March 6, 2019, and assessed less than marked limitation in the domain of caring for oneself. (Tr. 129).

In sum, the ALJ considered all the evidence of record when assessing the limitations in the domain of caring for oneself. It was not improper of the ALJ to find the evidence did not support the marked limitation which was assessed shortly after an acute hospitalization that essentially set the child up for treatment, which was successful in reducing symptoms.

**ACCORDINGLY, it is**

    **ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is**
        **<u>DENIED</u>; and it is further**

**ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 7) is GRANTED**.

Dated: March 10, 2023                                            *J. Gregory Wehrman*

Rochester, New York                                              HON. J. Gregory Wehrman
                                                                 United States Magistrate Judge